UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES DONOHUE,

                      Plaintiff,

              v.                                    **MEMORANDUM AND ORDER**

*Court Lieutenant* JOHN MARSH; *Court Officer*            19-CV-207 (RPK) (RML)
ALBERT BEVAQUA, *Shield No. 3059*; *Court
Officer* MICHAEL MALLEN, *Shield No. 6645*;
*Court Officer* CARMELLA LUBRANO,
*Shield No. 3338*; *Court Officer* STEVEN
CHIAIA, *Shield No. 7096*; *Court Officer*
MICHAEL DECICCO, *Shield No. 7026*; *Court
Officer* ANTHONY BURBANO, *Shield No.
6876*; JOHN DOES; *and* RICHARD ROES,

                      Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       Plaintiff James Donohue sues Lt. John Marsh and Officers Albert Bevacqua,[1] Michael Mallen, Carmella Lubrano, Steven Chiaia, Michael Decicco, and Anthony Burbano for his arrest at the Richmond Family Court and subsequent prosecution. Lt. Marsh and Officers Mallen, Lubrano, Chiaia, DeCicco, and Burbano ("OAG defendants") move for summary judgment, as does Officer Bevacqua. For the reasons that follow, defendants' motions are granted in full.

## BACKGROUND

       The following facts—taken from the parties' Rule 56.1 statements, depositions, and evidentiary filings—are uncontradicted by other evidence unless noted. While plaintiff states with respect to several facts that he "denies information sufficient to form a belief as to this statement," *see, e.g.*, Pl.'s R. 56.1 Statement ¶¶ 2–3, 24, those facts are admitted "to the extent that [they] are

---

[1] The Court uses what appears to be Officer Bevacqua's spelling of his name, "Bevacqua," rather than "Bevaqua." *See, e.g.*, Mot. for Summ. J. by Officer Bevacqua (Dkt. #68).

1

adequately supported with record evidence," because plaintiff does not "properly controvert[]" them "with a specific and relevant citation to evidence in the record," *Zaniewska v. City of New York*, No. 11-CV-2446 (RRM) (VVP), 2013 WL 3990751, at *1 n.3 (E.D.N.Y. Aug. 5, 2013); *see Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citing Local R. 56.1(c)). This narrative also draws on unambiguous video footage, where available. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Pratt v. Nat'l R.R. Passenger Corp.*, 709 F. App'x 33, 34 (2d Cir. 2017).

On January 11, 2018, plaintiff arrived at the Richmond Family Court. Pl.'s R. 56.1 Statement ¶ 4 (Dkt. #70-1). At the entrance, plaintiff squabbled with the officers responsible for routine security screenings of court visitors. *Id*. at ¶¶ 1, 8. According to plaintiff, these screenings constituted illegal searches. *Id*. at ¶ 8. The officers called over their supervisor, Lt. Marsh, to manage the situation. *Id*. at ¶ 13. Ultimately, plaintiff complied with the screening, surrendering leather gloves with raised material above the knuckles that the officers determined could be dangerous if used as weapons. *Id*. at ¶¶ 9–11. The officers gave plaintiff a property voucher for his gloves. *Id*. at ¶ 16.

During the security screening and afterward, plaintiff spoke of his skill and training as a martial artist. *Id*. at ¶¶ 15, 18. During plaintiff's court hearing—which Lt. Marsh and Officer DeCicco had been asked to attend to provide extra security—plaintiff again discussed his martial arts skills. *Id*. at ¶ 17–18. The hearing concerned plaintiff's wife's application for a restraining order against plaintiff. *Id*. at ¶ 4, 17. After the hearing, while waiting in the courthouse lobby for paperwork, plaintiff observed a woman wearing her hair pinned up with a hair pin or needle. *Id*.

at ¶¶ 19–22. Plaintiff complained that the officers should have confiscated her hair pin. *Ibid*. He then photographed the woman. *Ibid*.

At 1:00 P.M., the officers began clearing the courthouse for a regular midday closing. *Id*. at ¶ 24.[2] At around 1:01 P.M., plaintiff returned to the security desk with the voucher. *Id*. at ¶ 27. Although multiple officers instructed plaintiff to leave, he did not. *Id*. at ¶ 28; Interior Video. And when Officer Chiaia reached for the voucher, plaintiff yanked it back, turned, walked to Lt. Marsh, and held it, declaring, " I wrote you a little message. It's called the Fourth Amendment." Pl.'s R. 56.1 Statement ¶¶ 28–31; Interior Video. Plaintiff had written the text of the Fourth Amendment on the back of the slip. Pl.'s R. 56.1 Statement ¶ 23. Officer Chiaia had to walk around the desk to receive the voucher. Officer Lubrano then handed plaintiff his gloves. *Id*. at ¶¶ 32–33. Plaintiff took the gloves, gestured to Officer Lubrano, and said, "thanks. See you around, princess." *Id*. at ¶ 34. The officers again directed plaintiff to leave. *Id*. at ¶ 35. On his way to the exit, plaintiff stopped, turned around, and raised his hand in the direction of Officer Mallen. *Id*. at ¶ 38.

A few moments later, plaintiff again turned around to face Officer Mallen. *Id*. at ¶ 39; Decl. of Michael Mallen ¶ 2; Decl. of Owen T. Conroy, Ex. 7, at 82:14–83:12 (Dkt. #67-13) ("Donohue Tr."). At that point, Officers Mallen and Bevacqua approached plaintiff to escort him out and initiate an arrest. Pl.'s R. 56.1 Statement ¶ 40. According to plaintiff, Officer Mallen pushed him twice toward the exit. Donohue Tr. 81:18–82:20. These pushes caused plaintiff no injury. *Id*. at 171:9–15.

Officers Chiaia, Lubrano, and Burbano followed them outside and assisted in the arrest, pressing plaintiff into a chain-link fence and pole while attempting to handcuff him. Pl.'s R. 56.1

---

[2] While plaintiff points out that the surveillance video does not show anyone leaving between 12:59:58 P.M. and 1:00:39 P.M., *see* Pl.'s R. 56.1 Statement ¶ 24; Decl. of Michael Mallen, Ex. 1 (Dkt. #67-7) ("Interior Video"), this 41-second clip does not controvert the officers' testimony that the courthouse closes at 1:00 P.M. and that any visitors then present are cleared.

3

Statement ¶¶ 41–44. Lt. Marsh and Officer DeCicco observed. *Id.* at ¶ 44. Plaintiff remained on his feet during the handcuffing, which took about 51 seconds to complete. *Id.* at ¶¶ 43, 45. On the video, plaintiff can be seen lunging forward before the officers succeed in pinning him to the fence and he appears to have wrapped his arm around the pole, but it is unclear whether plaintiff offered any further resistance. Decl. of Owen T. Conroy, Ex. 2 (Dkt. #67-8) ("Exterior Video"). The video does not indicate that plaintiff attacked the officers while outside, and he appears to remain calm throughout the encounter. *Ibid.*

According to plaintiff, the handcuffing caused him several bruises and scrapes. Pl.'s R. 56.1 Statement ¶ 41 (citing Decl. of Fred Lichtmacher, Ex. 4 (Dkt. #70-6) ("Plaintiff's Photographs")). However, he declined to obtain a medical exam or any professional medical treatment. *Id.* at ¶ 48. Officer Mallen also suffered a contusion during the arrest, when his hand was pressed between plaintiff and the fence. *Id.* at ¶¶ 51–54. It is unclear whether plaintiff caused the injury by pressing himself against Officer Mallen's hand, or if Officer Mallen's fellow officers caused the injury by pushing plaintiff. Exterior Video.

The next day, plaintiff was arraigned and charged with obstructing governmental administration in the second degree, N.Y. Penal Law § 195.05, criminal trespass in the third degree, *id.* § 140.05, resisting arrest, *id.* § 205.30, and assault in the second degree, *id.* § 120.05(3). *See* Compl. ¶ 31; Pl.'s R. 56.1 Statement ¶¶ 55–56. Officer Bevacqua swore out the criminal complaint. Decl. of Owen T. Conroy, Ex. 5, at 1 (Dkt. #67-11) ("Criminal Complaint"). The complaint stated that plaintiff resisted arrest by "flail[ing] his arms, refus[ing] to give the informant his hands, lung[ing] away from the informant, [and] wrap[ping] his hands around a pole." *Id.* at 2. It also stated that "while attempting to perform an arrest of defendant, [Officer Mallen] suffered physical injury . . . to [his] right hand." *Ibid.*

4

The assault charge was dismissed in May, *id*. at ¶ 59, and plaintiff agreed to an adjournment in contemplation of dismissal on the three other charges in August, *id*. at ¶ 60. Those charges were later dismissed. *Id*. at ¶ 61.

Plaintiff does not identify any restrictions or deprivations of liberty after the arraignment in his Rule 56.1 Statement. *See* Pl.'s R. 56.1 Statement.

Plaintiff now sues. *See* Compl. (Dkt. #1). He brings claims under 42 U.S.C. § 1983 for (i) false arrest, (ii) excessive force, (iii) abuse of process, (iv) malicious prosecution, (v) fabrication of evidence (the "fair-trial claim"), (vi) denial of access to court, (vii) First Amendment retaliation, (viii) an equal protection violation, (ix) failure to intervene, and (x) negligent training and supervision. *Id*. at ¶¶ 46, 49. In addition, plaintiff brings claims under New York law for (xi) assault, (xii) battery, (xiii) false arrest and imprisonment, (xiv) trespass, (xv) malicious prosecution, (xvi) abuse of process, (xvii) negligence, and (xviii) violations of Sections 6, 8, 9, 11, and 12 of Article 1 of the New York Constitution. *Id*. at ¶¶ 51–72.

The OAG defendants and Officer Bevacqua have moved for summary judgment on all claims. *See* Mot. for Summ. J. by OAG Defendants (Dkt. #66); Mot. for Summ. J. by Officer Bevacqua (Dkt. #68).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). In determining whether there is a genuine issue of material fact, a court

evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *See ibid*. A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986).

"A court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." *24/7 Recs., Inc. v. Sony Music Ent., Inc*., 429 F.3d 39, 46 (2d Cir. 2005) (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)). But "it may in its discretion" do so. *Ibid.* (quoting *Holtz*, 258 F.3d at 73).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers[.]" Fed. R. Civ. P. 56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotations, alterations, and citation omitted).

## DISCUSSION

Defendants' motions are granted in full. Qualified immunity entitles defendants to summary judgment on the Section 1983 false-arrest and excessive-force claims, and plaintiff has not presented adequate evidence to support a Section 1983 fair-trial claim. The Section 1983 failure-to-intervene claim fails because plaintiff has not presented evidence from which a factfinder could find defendants' liability for the underlying claims. Finally, because plaintiff

abandons the remainder of his claims, defendants are granted summary judgment on the remaining claims.

I. **Qualified Immunity Entitles Defendants to Summary Judgment on the Section 1983 False-Arrest Claim**

Defendants are entitled to summary judgment on plaintiff's Section 1983 false-arrest claim because arguable probable cause existed to believe that plaintiff both obstructed governmental administration in violation of New York Penal Law § 195.05 and committed a criminal trespass in violation of New York Penal Law § 140.05.

Typically, probable cause "is a complete defense to a constitutional claim of false arrest." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). Probable cause exists when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Qualified immunity, in turn, shields officers from liability under Section 1983 so long as "arguable probable cause" existed "to arrest the plaintiff." *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (quoting *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2014)). Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Applying these principles, defendants are entitled to qualified immunity because probable cause arguably existed that plaintiff had violated both Section 195.05, New York's obstruction of governmental administration statute, and Section 140.05, New York's criminal trespass statute.

7

As relevant here, Section 195.05 provides that "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function by means of intimidation, physical force or interference." N.Y. Penal Law § 195.05. An individual violates this statute "when (1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017) (citing N.Y. Penal Law § 195.05).

Under New York law, the prohibition against interference is construed broadly. "This element of the statute is satisfied when an individual 'intrude[s] himself into, or get[s] in the way of, an ongoing police activity.'" *Id.* at 210 (quoting *In re Kendell R.*, 897 N.Y.S.2d 83, 84 (N.Y. App. Div. 2010)). Liability attaches even when interference with police activity is "minimal." *In re Davan L.*, 91 N.Y.2d 88, 91 (N.Y. 1997). "[I]nappropriate and disruptive conduct at the scene of the performance of an official function even if there is no physical force involved" is enough. *Kass*, 864 F.3d at 209–10 (quoting *People v. Romeo*, 779 N.Y.S.2d 860, 861–62 (N.Y. App. Div. 2004)). Indeed, even "merely approaching the police, or speaking during the course of a police action, or disregarding police instructions, will support a conviction" for obstructing governmental administration. *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011). On this basis, courts have granted qualified immunity to officers who arrested an individual for refusing to move on a public sidewalk, *Kass*, 864 F.3d at 210, officers who arrested an individual who "tapped" an officer on the shoulder and said "excuse me" while the officer was conducting an arrest, *Antic v. City of New York*, 273 F. Supp. 3d 445, 450 (S.D.N.Y. 2017), *aff'd*, 740 F. App'x 203 (2d Cir. 2018), and an officer who arrested an individual who walked away during the search

8

of her bag at a courthouse, *Cooperstein v. Procida*, No. 00-CV-2642 (JM), 2001 WL 715831, at *4 (E.D.N.Y. June 4, 2001).

Given the breadth of this statute, reasonable officers could at least debate whether probable cause existed to arrest plaintiff for obstructing governmental administration. As to the first element, the parties do not dispute that defendants were public servants performing official functions by conducting routine security screenings and clearing the courthouse for its 1:00 P.M. closure. Pl.'s R. 56.1 Statement ¶¶ 1–3; *see* page 3 n.2, *supra*. Moreover, a reasonable officer could conclude that plaintiff was obstructing these functions. Not only did plaintiff argue with the officers, *see* Pl.'s R. 56.1 Statement ¶¶ 8, 21, but he photographed other visitors, *id*. at ¶ 22, pulled a property voucher out of an officer's grasp and forced him to leave his post to retrieve the voucher, *id*. at ¶¶ 31–32, taunted another officer, *ibid.*, and did not follow multiple orders to leave, *id*. at ¶¶ 35–36, 38; *cf. Kass*, 864 F.3d at 210 (plaintiff's refusal to "obey the officers' repeated orders to move along" and "pull[ing] away" from an officer who "placed his hand on [plaintiff's] elbow to guide [him] away" arguably satisfied interference element); *Antic*, 273 F. Supp. 3d at 450 (qualified immunity when officer arrested individual who tapped him on the shoulder during an arrest); *Cooperstein*, 2001 WL 715831, at *4 (qualified immunity for arresting an individual who walked away from an officer during a bag search). Finally, an officer could also reasonably find probable cause that plaintiff intended the interference. In assessing intent, officers are afforded "great" latitude. *Kass*, 864 F.3d at 210 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013)). Given that plaintiff failed to heed multiple instructions from officers, Pl.'s R. 56.1 Statement ¶¶ 35–36, 38, an officer could reasonably conclude that plaintiff knew what was expected of him at the courthouse, and that his refusal to comply was therefore intentional.

9

Defendants also had arguable probable cause to believe that defendant violated Section 140.05. That section makes it "unlawful to remain on the premises after being personally given a lawful order to depart." *Berger v. Schmitt*, 91 F. App'x 189, 190 (2d Cir. 2004). Here, despite the officers' repeated orders to leave the courthouse, plaintiff continued to taunt them, to turn around, and to argue with them. Pl.'s R. 56.1 Statement ¶¶ 31–32, 35–36, 38. Given plaintiff's multiple delays in exiting the courthouse, reasonable officers could conclude plaintiff had refused a lawful order to leave. *Cf. United States v. Segui*, No. 19-CR-188 (KAM), 2019 WL 5963893, at *9–10 (E.D.N.Y. Nov. 12, 2019) (probable cause exists when an individual returns to premises after being ordered to depart); *LaFever v. Clarke*, 525 F. Supp. 3d 305, 316 (N.D.N.Y. 2021) (officers had probable cause to arrest defendant for trespass when defendant at first refused to leave and several minutes later attempted to push past them toward the exit).

Accordingly, defendants prevail on the false-arrest claim.

## II. Qualified Immunity Shields Defendants from the Excessive-Force Claim

Qualified immunity entitles defendants to summary judgment on plaintiff's excessive-force claim.

Qualified immunity shields officers from liability unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, . . . officers are entitled to qualified immunity unless

10

existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (internal quotation marks and citation omitted).

Here, the absence of "precedent squarely govern[ing] the specific facts at issue" entitles defendants to summary judgment. *Ibid*. Plaintiff's claim rests on two alleged uses of force: (i) two pushes by Officer Mallen directing plaintiff toward the courthouse door, which caused plaintiff no injury, Donohue Tr. 81:18–82:20, 171:9–15, and (ii) the pressing of plaintiff into a chain-link fence and pole while the officers struggled to handcuff him, resulting in several scrapes and bruises, Exterior Video; Plaintiff's Photographs. Neither allegation suffices to carry plaintiff's claim past summary judgment. *Cf. Tracy v. Freshwater*, 623 F.3d 90, 95–99 (2d Cir. 2010) (considering whether officers used excessive force in sequential portions of encounter).

The parties cite no precedent establishing that a push that causes no injury, directing a noncomplying, arguably trespassing individual toward an exit, constitutes an excessive use of force. To the contrary, numerous courts have found that pushing a noncomplying individual without causing any injury either does not constitute excessive force, *Smalls v. Cnty. of Suffolk*, No. 14-CV-4889 (SFJ) (AKT), 2019 WL 4038742, at *15 (E.D.N.Y. Aug. 27, 2019) (shoving plaintiff aside to conduct search did not constitute excessive force) (collecting cases); *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (affirming directed verdict for defendant officers who "push[ed]" resisting detainee along without causing injury), or is at least shielded by qualified immunity, *e.g.*, *Petway v. City of New York*, No. 12-CV-279 (ARR) (LB), 2014 WL 839931, at *8 (E.D.N.Y. Mar. 4, 2014) ("Plaintiff himself admits that P.O. Westbrook gave him a 'slight shove' causing him no pain or injury and requiring no medical treatment, and such amount of force cannot be considered excessive."); *Pajazetovic v. City of Utica*, No. 18-CV-1496 (TJM) (ATB), 2021 WL 4440473, at *8 (N.D.N.Y. Sept. 27, 2021) (officer who shoved individual arguing with firefighter

11

away from firefighter entitled to qualified immunity); *Husbands ex rel. Forde v. City of New York*, No. 05-CV-9252 (NRB), 2007 WL 2454106, at *13–14 (S.D.N.Y. Aug. 16, 2007) (pushing individual back from scene of arrest did not constitute excessive force); *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) ("[T]o conclude that a 'push' that does not cause the slightest of physical injuries to the plaintiff is nonetheless an actionable use of excessive force would be to hold that *any* physical contact by an arresting officer with an arrested person is actionable."). On this basis, I am unable to conclude that existing "precedent squarely govern[ing] the specific facts at issue" prohibited Officer Mallen's pushes. *See Kisela*, 138 S. Ct. at 1153. Accordingly, defendants are entitled to qualified immunity on this portion of the claim.

The same logic entitles defendants to summary judgment on the allegations that they pressed plaintiff into a chain-link fence and pole while handcuffing him. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Defendants knew that plaintiff had been bragging about his martial arts skills all morning. Pl.'s R. 56.1 Statement ¶¶ 15, 18. They also knew that he possessed gloves that could make him more dangerous in a brawl. *Id*. at ¶¶ 9–11, 15. And on top of that, the officers knew that plaintiff was in court because he had been accused of a physical assault. *Id*. at ¶¶ 4, 15–18. Finally, plaintiff had begun arguing with the officers from the moment he set foot in the courthouse that morning, *id*. at ¶ 8, photographed other courthouse visitors, *id*. at ¶¶ 19–22, interfered with the officers' work, *id*. at ¶¶ 28–31, and disregarded or, at most, begrudgingly complied with their commands, *ibid*. In short, they knew he was both obstreperous and capable of inflicting harm.

In this context, the officers did not violate clear precedent by pressing plaintiff into a chain-link fence and a pole while handcuffing him. They did not strike or kick him while handcuffing

12

him, and plaintiff remained on his feet, remained composed, and sustained only bruises and scrapes. *See* Exterior Video; Plaintiff's Photographs. Under comparable circumstances, courts have found such uses of force either reasonable or shielded by qualified immunity. *See, e.g., Faruki v. City of New York*, No. 10-CV-9614 (LAP), 2012 WL 1085533, at *2, *6 (S.D.N.Y. Mar. 30, 2012) (granting summary judgment to officer arresting suspected trespasser because "forcefully grabbed and twisted [suspect's] arms" and "banged [suspect's] wrists on a table" during handcuffing did not constitute an unreasonable use of force), *aff'd*, 517 F. App'x 1 (2d Cir. 2013); *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) (affirming grant of summary judgment on excessive force claim to patrolmen who pushed trespasser onto his stomach in order to handcuff him); *Fifield v. Barrancotta*, 545 F. Supp. 2d 307, 311 (W.D.N.Y. 2008) (officers who seized suspect's arms, placed them behind back, and handcuffed suspect, causing shoulder pain entitled to summary judgment because force was reasonable), *aff'd*, 353 F. App'x 479 (2d Cir. 2009); *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 476 (W.D.N.Y. 2008) (granting summary judgment to defendant officer who grabbed arrestee's arm, spun him around, and pushed him into a stove to frisk and handcuff him because amount of force was reasonable) (collecting cases); *Style v. Mackey*, No. 20-2165, 2021 WL 5022657, at *1 (2d Cir. Oct. 29, 2021) (summary order) (officer who, in course of handcuffing, put knee on back of arrestee suspected of making a false statement entitled to qualified immunity); *Massaro v. Town of Trumbull*, 525 F. Supp. 2d 302, 305 (D. Conn. 2007) (granting summary judgment on basis of qualified immunity to officer who pushed potentially dangerous arrestee to ground in course of arrest), *aff'd sub nom. Massaro v. Jones*, 323 F. App'x 68 (2d Cir. 2009).

In short, defendants are entitled to summary judgment on this claim as well.

**III.     Summary Judgment Is Warranted on the Fair-Trial Claim**

Defendants also prevail on the fair-trial claim. To establish a violation of the right to a fair trial, a plaintiff must prove that "an (1) investigating official (2) fabricate[d] evidence (3) that [was] likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)). Here, plaintiff has not put forward evidence from which a factfinder could conclude that defendants fabricated evidence that was likely to influence a jury's decision, or that these fabrications resulted in a deprivation of liberty.

To support the fabrication element, plaintiff asserts that the criminal complaint prepared by Officer Bevacqua contained "fictional allegations," and he block-quotes the portions of the complaint averring that plaintiff (i) remained in the courthouse despite being directed to exit; (ii) interfered with the officers' attempts to arrest him by "flail[ing]" his arms, "refus[ing]" to give the officers his hands, "lung[ing]" away from the officers, and "[w]rapp[ing]" his hands around a pole; and (iii) ignored their commands to stop resisting. Pl.'s Mem. in Opp. 3; *see* Criminal Complaint 3.

But plaintiff does not actually dispute the core facts alleged in this portion of the complaint. He does not dispute that he ignored lawful commands to exit the courthouse. Pl.'s R. 56.1 Statement ¶¶ 28–31. Nor does he dispute that he raised his arms when the officers tried to escort him out. *Id*. at ¶¶ 38–39. Moreover, when plaintiff first appears on the exterior video, he can be seen briefly lunging or pushing forward, Exterior Video, as well as wrapping his left arm around the pole, Exterior Video (manila envelope clutched in plaintiff's left hand indicates his arm is around the pole), and plaintiff does not offer evidence or testimony to the contrary, *see* Pl.'s R. 56.1 Statement. At most, plaintiff suggests that he did not engage in resistance because he did not

14

fight the officers. *See* Donohue Tr. 92:17–19 (plaintiff stating that "[h]ad I resisted in any manner whatsoever, I could have injured [the officers] extremely"). But the complaint, fairly read, does not suggest plaintiff engaged in that type of resistance. *See* Criminal Complaint 3 (alleging that plaintiff "flailed his arms, refused to give the informant his hands, lunged away from the informant, wrapped his hands around a pole to prevent informant from handcuffing him, and disobeyed the informant's lawful commands to stop resisting"); *see also* Exterior Video. Plaintiff has thus not raised a genuine issue of material fact as to whether these statements in the complaint amounted to fabrications.

Nor can petitioner sustain a fabrication of evidence claim on the theory that Officer Bevacqua fabricated evidence because "the video evidence produced shows no assault" by plaintiff. Pl.'s Mem. in Opp. 7; *see id.* at 3. Officer Bevacqua's sworn complaint attests only that Officer Mallen "suffered physical injury" to his right hand "while attempting to perform an arrest of plaintiff"—without attributing that injury to plaintiff or anyone else. Criminal Complaint 3. Officer Mallen's medical records indicate that he did suffer a contusion to his hand, *see* Decl. of Owen T. Conroy, Ex. 4, at 3 (Dkt. #67-10), and plaintiff has not offered contradictory evidence. Accordingly, plaintiff has not put forward evidence from which a jury could find that any of Officer Bevacqua's statements regarding the injury to Officer Mallen were fabrications.

Separately, plaintiff's fabrication claim relating to the assault charge cannot survive summary judgment because plaintiff has not identified evidence that the third-degree assault charge resulted in any "further deprivation" of liberty beyond that caused by the other three charges. *Rowell v. City of New York*, No. 16-CV-6598 (AJN), 2019 WL 280469, at *2 (S.D.N.Y. Jan. 22, 2019) (quoting *Ganek*, 874 F.3d at 91). Plaintiff was released after his arraignment without any restrictions imposed as a condition of release. Pl.'s R. 56.1 Statement ¶ 56. The

15

prosecutors then dropped the assault charge several months later while still pursuing the other three. *Id*. at ¶ 60. Plaintiff identifies no deprivation of liberty that resulted from the assault charge in particular. *See* Pl's R. 56.1 Statement. Without evidence of such a deprivation, plaintiff's allegations that the basis for assault charge was fabricated cannot sustain a fair-trial claim. *Cf. Hanson v. New York City*, No. 15-CV-1447 (MKB), 2018 WL 1513632, at *18 (E.D.N.Y. Mar. 27, 2018).

Therefore, defendants are granted summary judgment on plaintiff's fair-trial claim.

### IV.     The Failure-to-Intervene Claim Lacks Merit

Summary judgment is also appropriate on the failure-to-intervene claim. A defendant may be liable for failure to intervene only if that "failure permitted fellow officers to violate a [plaintiff's] clearly established statutory or constitutional rights." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 129 (2d Cir. 1997) (citation omitted). Accordingly, a "failure to intervene claim is contingent upon the disposition of the [underlying] primary claims." *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013); *see Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646 (S.D.N.Y. 2020) (collecting cases). Because defendants are entitled to summary judgment on all of plaintiff's underlying claims, they also prevail on this claim.

### V.     The Remaining Claims Have Been Abandoned

Finally, I grant defendants summary judgment to defendants on the remainder of plaintiff's claims. "Where a partial response to a motion for summary judgment is made—*i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 14 (2d Cir. 2017) (brackets omitted; ellipses in original) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014)). "Even where abandonment by a counseled

party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." *Cui v. Fed. Bureau of Investigation*, 551 F. Supp. 3d 4, 16 (E.D.N.Y. 2021) (brackets and internal quotations omitted) (quoting *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016)) (collecting cases). Plaintiff's opposition papers satisfy this standard. In response to defendants' motions for summary judgment, plaintiff lists each of the claims included in the complaint. Pl.'s Mem. in Opp'n 1. He then declares that he has stated four valid claims—the claims for false arrest, excessive force, failure to intervene, and fabrication of evidence under Section 1983—and proceeds to defend those claims alone. *Id.* at 2, 4–9. Plaintiff's acknowledgement of all his claims, his specification of the four valid claims, and his defense of those for claims alone are sufficient to permit "a court [to] . . . infer" that the remaining claims have been abandoned. *Jackson*, 766 F.3d at 198. Because plaintiff has abandoned these claims, defendants are entitled to summary judgment.

## CONCLUSION

Defendants' motions for summary judgment are granted in full. The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

                                              */s/ Rachel Kovner*
                                              RACHEL P. KOVNER
                                              United States District Judge

Dated: September 8, 2022
       Brooklyn, New York